J-S42021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL ANDREW SCHELL | : | |
| | : | |
| Appellant | : | No. 355 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 23, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0002040-2022

BEFORE: LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: FEBRUARY 25, 2025**

Paul Andrew Schell ("Schell") appeals nunc pro tunc from the judgment of sentence entered by the Luzerne County Court of Common Pleas ("trial court") following his guilty plea to 100 counts of sexual abuse of children.[1]  On appeal, he challenges the trial court's decision to grant the post-sentence motion filed by the Commonwealth, changing his designation as a Tier I sexual offender (with a fifteen-year registration requirement) to a Tier II sexual offender (with a twenty-five-year registration requirement).[2]  Upon review, we vacate the Schell's judgment of sentence and remand the matter with instructions.

_____

[1]  18 Pa.C.S. § 6312(c), (d).

[2]  The tiered registration system is the product of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.11-9799.75.

The trial court aptly summarized the facts and procedural history underlying this appeal:

On November 14, 2022, [Schell] entered a guilty plea to 75 counts of Possession of Child Pornography and 25 counts of Dissemination of Photos or Films of Child Sex Acts. This guilty plea included an agreement with the Commonwealth that lowered the offense grading to a felony of the third degree and reduced the offense gravity score (OGS) to 7 from 9. The Commonwealth indicated on the written plea agreement form and read into the record during the guilty plea hearing that [Schell] would be required to register as a Tier I sex offender for 15 years.

On February 23, 2023, a sentencing hearing was held in this matter. As indicated by the Commonwealth during the guilty plea hearing, [the trial c]ourt ordered [Schell, in relevant part,] to register as a Tier I sex offender for 15 years. On March 3, 2023, the Commonwealth filed a post-sentence Petition to Amend Sentencing Order seeking to modify [Schell]'s sentence to include the Tier II 25-year sex offender registration period instead of the Tier I 15-year registration period. On March 6, 2023, in response to the Commonwealth's Petition to Amend Sentencing Order, [Schell] filed a post-sentence Motion for Specific Performance of the Terms of the Guilty Plea seeking enforcement of the written and oral guilty plea agreement to include Tier I 15-year sex offender registration.

On March 8, 2023, a hearing was held on both the Commonwealth and defense post-sentence motions. The Commonwealth advised [the trial c]ourt that the Tier I sex offender registration requirement written on the guilty plea form and read into the record by the Commonwealth during the guilty plea hearing was in error. The Commonwealth advised [the trial c]ourt that it only negotiated a lower offense grading and OGS (from 9 to 7) in return for the guilty plea and that by statute the Tier II 25-year sex offender registration requirement would apply in this case. [Schell] requested specific performance of the guilty plea agreement, to include the Tier I 15-year sex offender registration period. [Schell] submits that the guilty plea was a negotiated bargain (both written and orally) that included the Tier I 15-year sex offender registration and should be enforced to include the bargained for sex offender registration period. [Schell] did not move to withdraw his guilty plea and concedes he

would be subject to the Tier II 25-year sex offender registration period based off the charges he pled guilty to. At the post-sentence motions hearing on March 8, 2023, [the trial c]ourt denied the Commonwealth's Petition to Amend Sentencing Order, therefore leaving [Schell]'s Motion for Specific Performance of the Terms of the Guilty Plea moot.

On April 6, 2023, after review and reconsideration of the record, [the trial c]ourt sua sponte vacated its March 8, 2023 order, granted Commonwealth's Petition to Amend Sentencing Order and denied [Schell]'s Motion for Specific Performance of the Terms of the Guilty Plea. [Schell] was further ordered to register for 25 years as a Tier II sex offender relative to Counts 76-100.

Trial Court Opinion, 5/20/2024, at 2-4 (footnotes and record citations omitted). On March 8, 2024, Schell filed a direct appeal nunc pro tunc following the reinstatement of his direct appeal rights pursuant to the Post Conviction Relief Act.[3] Both Schell and the trial court have complied with Rule 1925 of the Pennsylvania Rules of Appellate Procedure.

Schell raises a single issue for our review: "Whether the trial court abused its discretion or committed an error of law … in sentencing [Schell] to a Tier II registration rather than a Tier I registration as set forth in the plea agreement, thus undermining the plea negotiation process." Schell's Brief at 1 (unnecessary capitalization omitted).

In its written opinion, the trial court explains that it was powerless to permit the Tier I registration term of the plea agreement to stand because SORNA expressly removes from the sentencing court any authority to modify

---

[3] 42 Pa.C.S. §§ 9541-9546.

the statutory registration requirements. Trial Court Opinion, 5/20/2024, at 5 (citing 42 Pa.C.S. § 9799.23(b), which states: "the court shall have no authority to relieve a sexual offender from the duty to register under this subchapter or to modify the requirements of this subchapter as they relate to the sexual offender"). The trial court observes that Schell was convicted of sexual abuse of children under section 6312(c), which SORNA classifies as a Tier II offense and for which an offender must register for twenty-five years. *Id.* (citing 42 Pa.C.S. §§ 9799.14(c)(4), 9799.15(a)(2)). Thus, the trial court states that it was required to correct the illegal sentence via its April 6, 2024 order. *Id.* at 6 (citing **Commonwealth v. Dixon**, 161 A.3d 949, 951 (Pa. Super. 2017), for the proposition that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction").

Schell does not directly address the legality of his agreed upon sentence. Instead, he contends that he was deprived of the benefit of his bargain with the Commonwealth when the trial court granted the Commonwealth's motion to amend his sentence, requiring him to register as a Tier II offender under SORNA for twenty-five years instead of as a Tier I offender for fifteen years pursuant to the term of his plea agreement.[4] Schell's Brief at 7-8. According

---

[4] Although Schell styles his claim as a challenge to the discretionary aspects of his sentence, we observe that "[n]ot every error of law or abuse of discretion involving a judgment of sentence in a criminal case necessarily implicates the discretionary aspects of sentencing." **Commonwealth v. Parsons**, 969 A.2d 1259, 1270 (Pa. Super. 2009) (en banc). Here, as in
*(Footnote Continued Next Page)*

- 4 -

to Schell, the Commonwealth breached the terms of the plea agreement by making this request and the trial court erred by granting it, as the record is clear that the fifteen-year registration requirement was part of the plea agreement upon which he relied on when entering his plea. *Id.* at 8 (citing N.T., 2/23/2023, at 11-12). Schell thus asserts that he is entitled to specific enforcement of the terms of the plea agreement (i.e., for Schell to be required to register as a Tier I offender under SORNA for fifteen years). *Id.* at 8-9 (citing *Commonwealth v. Wilkinson*, 277 A.2d 341 (Pa. 1971), and *Commonwealth v. Zabezewski*, 333 A.2d 898 (Pa. 1975)).

For its part, the Commonwealth recognizes the critical role that plea bargains play in our system of criminal justice and the necessity of enforcing their terms "to prevent any perversion of the system." Commonwealth's Brief at 7 (citing *Commonwealth v. Snook*, 230 A.3d 438, 444 (Pa. Super. 2020)). It contends, however, that Schell's registration as a Tier I offender was not a term included in the plea agreement but was simply an error by the

---

*Parsons*, Schell is challenging "[the trial] court's authority to tinker with the negotiated plea bargain, once the court has accepted the plea," which we recognized addresses "(1) the trial court's failure to preserve the integrity of the plea bargain process and (2) [a] breach of a plea agreement entered on the record and accepted[.]" *Id.* Indeed, despite the fact that Schell includes a statement pursuant to Pa.R.A.P. 2119(f), the entirety of his argument, as well as relief he seeks—specific performance of the terms of his negotiated plea agreement—pertain to the integrity of the plea process and an alleged breach of the plea agreement by the Commonwealth and has nothing to do with the trial court's exercise of its discretion in sentencing him. *See generally* Schell's Brief at 7-9. We therefore conduct our review accordingly.

Commonwealth when communicating the sentence to the trial court. *Id.* at 8. According to the Commonwealth, the record of the guilty plea colloquy and the sentencing proceeding makes clear "that the only negotiated terms of the agreement were the grading of many of the offenses and that an OGS of 7 applied to all of the offenses." *Id.* at 8-9. The Commonwealth observes that Schell does not contest that his convictions require him to register as a Tier II offender under SORNA, nor has he claimed that any promise of a fifteen-year registration period induced him to plead guilty. *Id.* at 9. Because it was not a term of the plea agreement, the Commonwealth concludes that Schell is not entitled to specific performance. *Id.* at 9-10.

As the parties recognize, our starting point in addressing this question is to determine "what the parties to this plea agreement reasonably understood to be the terms of the agreement." ***Commonwealth v. Fernandez***, 195 A.3d 299, 308 (Pa. Super. 2018) (citation omitted). If "a plea agreement is legally possible to fulfill, when the parties enter the plea agreement on the record, and the court accepts and approves the plea, then the parties and the court must abide by the terms of the plea." ***Commonwealth v. Parsons***, 969 A.2d 1259, 1268 (Pa. Super. 2009) (en banc).

> Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the

surrounding circumstances and involves a case-by-case adjudication.

\* \* \*

Our courts have demanded strict compliance with [the Commonwealth's duty to honor plea agreements] in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant to the right to trial by jury.

***Commonwealth v. Coleman***, 320 A.3d 1217, 1222–23 (Pa. Super. 2024) (quoting ***Snook***, 230 A.3d at 444).

"It is settled that where a plea bargain has been entered into and is violated by the Commonwealth, the defendant is entitled, at the least, to the benefit of the bargain." ***Zakrzewski***, 333 A.2d at 900 (Pa. 1975); ***see also Commonwealth v. Kroh***, 654 A.2d 1168 (Pa. Super. 1995) (recognizing that the Commonwealth's inability, as a matter of law, to fulfill a term of a plea bargain results in a finding that it breached the plea agreement).[5] If a "term is part of the parties' plea agreement … then the convicted criminal is entitled to specific performance of the term." ***Commonwealth v. Martinez***, 147 A.3d 517, 533 (Pa. 2016).

---

[5] Of course, that the parties agreed to a particular sentence or any specific terms does not bind the trial court, as the court is free to disregard the agreement and sentence the defendant pursuant to its discretion. ***Commonwealth v. Root***, 179 A.3d 511, 518 (Pa. Super. 2018) (citation omitted). In such circumstances, "the trial court must give the defendant the option to withdraw his plea and proceed to trial." ***Id.***

Where specific performance of the term of the agreement is impossible because the term cannot legally be fulfilled, both this Court and our Supreme Court have repeatedly held that the defendant must nonetheless be given the benefit of his bargain or, at his election, the ability to withdraw his guilty plea. In **Commonwealth v. Zuber**, for example, the Commonwealth promised, as part of a plea agreement, that it would join defense counsel's request to the State Parole Board to have Zuber's new sentence run concurrently with his back time for his parole violation. **Commonwealth v. Zuber**, 353 A.2d 441, 443 (Pa. 1976). The trial court accepted the plea, including this term of the agreement. **Id.** This term, however, could not legally be fulfilled, as the law required "a parole violator convicted and sentence[d] to prison for another offense [to] serve his or her back time and the new sentence in consecutive order." **Id.** (citing 61 P.S. § 305). The **Zuber** Court therefore remanded the matter to the trial court, instructing it to modify [Zuber's] sentence by "reducing it to two and one-half to fifteen years' imprisonment," which would account for the four and one-half years of back time Zuber owed on his parole violation. **Id.** at 446.

Similarly, in **Commonwealth v. Gillins**, the parties entered a negotiated guilty plea, accepted by the trial court, which, in relevant part, indicated that his state sentence would run concurrently with his existing federal sentence. **Commonwealth v. Gillins**, 302 A.3d 154, 157 (Pa. Super. 2023). This promise could not be fulfilled, however, as the law clearly

provided "that neither the federal courts nor the federal Bureau of Prisons …
are bound by a state court sentencing order directing that an existing federal
sentence shall run concurrently to the newly imposed state sentence." *Id.*
(citing **Barden v. Keohane**, 921 F.3d 476, 478 n.4 (3d Cir. 1990)). Gillins
did not wish to withdraw his plea; thus, the remedy provided by this Court
was to give Gillins the benefit of his bargain by vacating his state sentence
(but keeping his underlying conviction intact), which allowed him to seek
credit for time served on his federal sentence. *Id.* at 165-66. We found that
"this way, the Commonwealth's plea agreement with [Gillins], as accepted by
the trial court, may be effectuated to provide the benefit of the bargain struck
between the parties." *Id.* at 166. **See also, e.g., Commonwealth v.
Hosack**, 326 A.2d 352 (Pa. 1974) (remanding case to the trial court to nol
prosse pending rape charges, as promised by the Commonwealth, pursuant
to the plea agreement); **Commonwealth v. Alvarado**, 276 A.2d 526 (Pa.
1971) (remanding for the trial court to modify defendant's sentence to life
without parole after the Commonwealth promised, pursuant to the plea
agreement, not to seek the death penalty but nonetheless recounted the
horrible details of the murder at sentencing).

Our review of the record in the case at bar reveals that Schell's
registration as a Tier I offender for fifteen years was, in fact, a term of the

plea agreement.[6]  During the guilty plea colloquy, the Commonwealth stated

the following on the record:

> With regard to case 2040 of 2022, [Schell] has agreed to plead guilty to the following: counts 1 through 75, possession of child pornography, graded as a felony of the third degree[.] … Counts 76 to 100, dissemination of photo or film of child sex acts, also a felony of the third degree.
>
> … The Commonwealth agrees to withdraw charges that are not above listed for plea.  If charges are withdrawn, [Schell] waives the right to file any post-trial or post-sentence motions except sentencing challenges, direct appeal, or petitions for post-conviction relief, with the exception of ineffective assistance of counsel claims.  [Schell] shall pay the cost of prosecution.  There's no restitution.  And [Schell] shall abide by the following:
>
> [Schell] shall complete sex offender counseling; [Schell] waives the 90-day sentencing period to be evaluated by the [sexual offender assessment board].  **[Schell] shall register as a [T]ier 1, 15-year registrant.**  [Schell] shall have no contact with minors; and [Schell] shall have no contact with places where minors frequent.

N.T., 11/14/2022, at 2-3 (emphasis added; unnecessary capitalization

omitted).

Following Schell's oral colloquy and agreement to the factual basis for

his plea, his counsel clarified on the record that there was an additional aspect

to the plea agreement that had not been mentioned, namely, a reduced OGS

of seven (instead of nine) for the crimes to which he pled.  *Id.* at 7-8.  The

---

[6]  As the trial court correctly noted at the hearing on the Commonwealth's motion to modify Schell's sentence, "there's no record supporting the assertion that [the Tier I offender designation] was an error or an oversight." N.T., 3/8/2023, at 7.  *See also Snook*, 230 A.3d at 444 ("Any ambiguities in the terms of the plea agreement will be construed against the Government.").

Commonwealth agreed, stating "[i]t's on the plea." *Id.* at 8. An examination of the written plea agreement reveals that a notation appears indicating that the OGS for the crimes to which Schell pled is seven; it also includes that Schell "shall register as a Tier I 15[-]yr. registrant." Plea Agreement, 11/14/2022. The trial court accepted the terms of the plea, and at sentencing, the trial court sentenced Schell in accordance with the agreement and the Commonwealth's representation of it on the record, including ordering Schell to register under SORNA as a Tier I offender for fifteen years. *See* N.T., 2/23/2023, at 10-11.

Additionally, our review of the law comports with that of the trial court. A conviction of sexual abuse of children under section 6312(c) qualifies as a Tier II offense under SORNA, for which an offender must register for twenty-five years, and SORNA further prohibits the courts from modifying an offender's duty to register. 42 Pa.C.S. §§ 9799.14(c)(4), 9799.15(a)(2), 9799.23(b)(2). Therefore, the term of the plea agreement provided by the Commonwealth and accepted by the trial court that allows Schell, convicted of twenty-five counts under section 6312(c), to register as a Tier I offender for fifteen years is illegal.

Schell does not wish to withdraw his plea; he instead seeks for this Court to reverse the trial court's decision modifying his sentence and remand the case to ensure he receives the benefit of his bargain. Schell's Brief at 8. Based on the agreed-upon terms of the guilty plea, we agree that he is entitled

to this relief. *See Commonwealth v. Nase*, 104 A.3d 528, 534 (Pa. Super. 2014) (Noting that the appellant "expressly agreed to plead guilty to unlawful contact with a minor so as to be subject to [a ten-year] registration period. Thus, registration consequences were unequivocally part of the plea negotiations and arrangement."). Based upon the case law cited supra, it is this Court's task to determine how that remedy is to be implemented.

We note that the other seventy-five counts to which Schell pled were under section 6312(d), a conviction for which is a Tier I offense under SORNA that requires an offender to register for fifteen years. *See id.*, §§ 97991.4(b)(9), 9799.15(a)(1). We further observe that, pursuant to the terms of his plea agreement, his convictions under section 6312(c) and (d) are both graded as third-degree felonies. *See* Plea Agreement, 11/14/2022; 18 Pa.C.S. § 6312(d.1)(2)(i). Therefore, for sentencing, OGS, and prior-record-score purposes, there is no functional difference between Schell's convictions under section 6312(c) and (d).

To ensure both parties continue to receive the benefit of the bargain as agreed to, we vacate the trial court's sentencing order and remand the matter. *See Zuber*, 353 A.2d at 446; *Gillins*, 302 A.3d at 166. On remand, the Commonwealth may either amend the plea agreement so that all 100 charges fall under section 6312(d) or it may nol prosse or withdraw the 25 charges under 6312(c) and permit Schell to plead guilty solely to the 75 charges under section 6312(d). All other terms of the plea agreement—including, but not

limited to, the OGS and grading of the charges—shall remain the same as it did in the original plea agreement. Thereafter, the trial court must conduct a new guilty plea hearing, at which it determines whether Schell desires to plead guilty to the charges included in the new plea agreement. If the trial court finds that his guilty plea is knowingly, voluntarily, and intelligently entered, it shall hold a sentencing hearing, at which it sentences Schell in accordance with its February 23, 2023 sentencing order. If Schell does not wish to plead guilty to the charges contained in the new plea agreement, or the trial court determines that his plea is not knowingly, voluntarily, or intelligently entered, Schell shall be permitted to proceed to trial. If Schell elects not to plead guilty, the Commonwealth shall not be limited to the charges it may pursue against Schell.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/25/2025